IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00246-CV

 

In the
Matter of J.L., a Juvenile,

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 256-J-05

 



MEMORANDUM  Opinion










 

Appellant J.L., a juvenile, complains in his sole
point of error that the trial court erroneously denied his motion to suppress
by finding his statements to police were voluntary and in compliance with the
requirements set forth in sections 51.09 and 51.095 of the Texas Family Code. 
We will affirm the judgment of the trial court.

Factual and Procedural Background 

 

On the early morning of June 19, 2005,
fifteen-year-old J.L. and two other young men were approached by police
officers after the officers received information that an assault and stabbing had
occurred in the area.  The officers noticed specks of blood on J.L.’s pants and
shoes and, upon a search, found a knife in J.L.’s pocket.  They arrested and transported
him to the Brazos County Juvenile Detention Center.

J.L. was booked into the detention center at 6:15
a.m. on the charge of unlawfully carrying a weapon.  District Judge Rick Davis
was telephoned at home and was asked to come to the detention center to apprise
J.L. of his rights.  When Judge Davis arrived, no pre-printed warning forms
were available, so he typed up a warning sheet that included his conclusions as
to probable cause of the crime of aggravated assault and a list of J.L.’s
rights as enumerated in section 51.095 of the Texas Family Code.[1]
 At the detention center, Judge Davis introduced himself to J.L. as “Judge
Davis” and told him that he was there to explain his rights.  Judge Davis began
a tape recorder, determined that J.L. spoke English, and then read to him the
appropriate warnings.  Judge Davis asked J.L. whether he would like to make a statement,
to which he responded, “I don’t know.”  Judge Davis reiterated that J.L. did
not have to make a statement, and J.L. then circled “I DO” want to make a
statement and signed the form.  After signing the form, J.L. was questioned,
and during the interview he admitted stabbing the complainant with the knife.

J.L. filed a pretrial motion to suppress the recorded
statement.  At the suppression hearing, Judge Davis testified that it was clear
to him that J.L. understood the warnings and he was convinced that J.L.
knowingly, intelligently and voluntarily waived his rights before giving his
statement to the detective.  Juvenile probation officer Angela Anders testified
that J.L. had previously been adjudicated for misdemeanor offenses two times
and on both occasions he was represented by an attorney.  Detective Agnew testified
that at no time during the interview did he threaten J.L. or make any promises,
nor did J.L. request to have an attorney present or stop the interview.  Dr.
Saunders, a clinical psychologist, gave expert testimony for J.L.  Dr. Saunders
testified that after meeting with J.L., she determined that he “didn’t
understand his rights – especially related to the legal implications.” 
Specifically, she said that he did not understand the concept of “legal counsel”
to mean attorney representation.

The trial court denied the motion to suppress,
finding that the confession was voluntary and legally obtained.  This appeal was
abated so the trial court could issue findings
of fact and conclusions of law supporting its denial of the motion to suppress.

Voluntariness 

 

J.L.’s sole issue contends that his
statement was not voluntary under the Fifth and Fourteenth Amendments. 
Specifically, he asserts that the statement was involuntary because of (1) the circumstances
related to his age and the capacity in which the warnings were given; and (2)
he did not understand his right to have a lawyer present.

Standard of Review

A ruling on a motion to suppress for a
juvenile proceeding should be reviewed using both an abuse of discretion and a
de novo review standard.  In re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002).  That is, we
review the trial court's ruling on a motion to suppress under a bifurcated
standard of review.  Id.; See Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000).  In reviewing the trial court's
decision, we do not engage in our own factual review.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d
857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a
suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Ross v.
State, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000).  There is an abuse of discretion
“when the trial judge’s decision was so clearly wrong as to lie outside that
zone within which reasonable persons might disagree.”  Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992); Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990).  If the court's resolution of a controverted issue on a
motion to suppress is supported by the record, a reviewing court should not
disturb the decision.  Muniz v. State, 852 S.W.2d 238, 252 (Tex. Crim.
App. 1993).  Therefore, we give
almost total deference to the trial court's rulings on (1) questions of
historical fact and (2) application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d
644, 652-53 (Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However,
we review de novo a trial court's rulings on mixed questions of law and fact if
they do not turn on the credibility and demeanor of witnesses.  Johnson,
68 S.W.3d at 652-53.

When the voluntariness of a confession is raised, the State
carries the burden of proving the confession was given voluntarily.  Griffin v. State, 765 S.W.2d 422, 430 (Tex. Crim. App. 1989).  In considering
whether a juvenile’s statement was voluntary, the court must examine the
totality of the circumstances.  R.J.H., 79 S.W.3d at 8; Rodriguez v.
State, 968 S.W.2d 554, 558 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  If the circumstances indicate that the juvenile defendant
was threatened, coerced, promised something in exchange for his confession, or
if he was incapable of understanding his rights and warnings, the trial court
must exclude the confession as involuntary.  Darden v. State, 629 S.W.2d
46, 51 (Tex. Crim. App. 1982).

The record does not support J.L.’s contention that he did not have
a full understanding of the proceedings and of the possible consequences of
confessing.  The totality of the circumstances reflects that
although J.L. was fifteen at the time of the offense charged, he was of normal
intelligence and was familiar with the juvenile adjudication process through
his two previous arrests.  Furthermore, the recorded statement reveals that although
the duration of the reading of rights was only three minutes and thirty-five
seconds, J.L. could hear and understand his rights as read by Judge Davis.  In
addition, after J.L. was read his rights, he was asked by Judge Davis whether
he would like to submit a statement.  His initial response was “I don’t know.” 
Judge Davis reassured J.L. that he was not required to make a statement, and it
was at this time J.L. agreed to give a statement.  Converse to the appellant’s
argument, J.L.’s age, the manner and means by which the warnings were given,
and his intellectual capacity (which would include his ability to understand
the juvenile process because of his previous experiences) all appear to have
positively aided in his decision to voluntarily make a statement.

J.L.’s
claim that he erroneously believed that Judge Davis was a police officer and that
he may not have understood that “counsel” meant “attorney” are not supported by
the record.  Judge Davis said that he introduced himself to J.L. as “Judge” and
it is not required by law that the juvenile defendant understand that his
warnings are being read by a judge, but only that a magistrate be present.  See
Tex. Fam. Code Ann. §
51.095(B)(i) (Vernon 2002).  Additionally, when J.L.’s rights were read to him
from the form drafted by Judge Davis, the word “counsel” is only used once. 
Judge Davis used the statutory term “attorney” to state that J.L had a right to
an “attorney” and that if he were unable to employ an “attorney,” one would be
appointed for him.  The word counsel is only used once and is used, not as a
noun to refer to legal representation, but as a verb to mean advise or consult.

J.L. also argues that Judge Davis gave
incorrect legal information that could be described as coercive, thus making
the confession involuntary.  On the warning form created by Judge Davis, he
included a finding of probable cause for aggravated assault, but at that time,
J.L. was being detained only for unlawfully carrying a weapon.  J.L. relies on Diaz
v. State for its holding that giving incorrect legal information can render
a confession involuntary.  Diaz v. State, 61 S.W.3d 525 (Tex. App. —San Antonio 2001, no pet.).  There, a juvenile was arrested for aggravated assault
with a deadly weapon, but before giving a confession he was told by a
magistrate that for the offense charged, he “might get up to a year in
confinement or up to a $10,000 fine if he was tried as an adult.”  Id. at 527.  However, the actual maximum prison term in the adult
system was up to 99 years for aggravated assault with a deadly weapon.  Id.  Diaz was certified to stand trial as an adult, and the trial court denied his
motion to suppress.  Id.  On appeal, the court held that the magistrate’s
additional incorrect legal information rendered the confession involuntary and
therefore inadmissible.  Id. at 528.  We find Diaz to be
distinguishable for two reasons.  First, the court noted that the Diaz
case was analogous to cases where a defendant is unable to
appreciate the actual value of his plea bargain because the maximum punishment
he risked without the bargain was overstated in the court's admonition,
rendering the plea involuntarily entered.  Id.  In the case at hand, no pleas,
promises, or sentences were ever discussed.  Second, in Diaz, the court
emphasized that the arrest was the juvenile’s first time to be in such a
situation.  Id.  Unlike Diaz, J.L. had previous experience with
the juvenile detention system, having been supervised on juvenile probation
twice.  For these reasons, we reject J.L.’s argument.

Compliance with Section 51.095 Waiver of Rights

 

J.L. also argues that his confession
was not obtained within the scope of the juvenile warning requirements
articulated in section 51.095(a)(5)(A) of the Texas Family Code.  He argues
that each and every right must be waived individually by the juvenile.  Section
51.095(a)(5)(A) reads:

(a)        Notwithstanding Section 51.09, the
statement of a child is admissible in evidence in any future proceeding concerning
the matter about which the statement was given if:

. . .

(5)        subject to Subsection (f), the
statement is made orally under a circumstance described by Subsection (d) and
the statement is recorded by an electronic recording device, including a device
that records images, and:

(A)       before making the statement, the child
is given the warning described by Subdivision (1)(A) by a magistrate, the
warning is a part of the recording, and the child knowingly, intelligently, and
voluntarily waives each right stated in the warning.

 Tex. Fam. Code Ann. § 51.095(a)(5)(A) (Vernon 2002). 

The confession of a juvenile is not
admissible at trial unless it is obtained in compliance with the section 51.095
warnings.  See In re L.M., 993 S.W.2d 276, 291 (Tex. App.—Austin 1999,
pet. denied).  A magistrate is required to read the warnings listed in section
51.095(a)(1)(A) to the juvenile suspect before any interrogation by law
enforcement.  Id. at 290-91.

J.L. argues that although the warnings required by
51.095 were given, the waivers as detailed in section 51.095(a)(5)(A) were not
secured in conformity with the statute.  In support, J.L. points to Judge
Davis’s testimony regarding his self-drafted document:

[Q]: 
Okay.  And when you drafted this form, you created a line down here.  I don’t
know what you’d call that.  Kind of a separated thing; right?

 

[A]: 
Yes.

 

[Q]: 
And then underneath it you created this statement that says, “Have had the
above-listed rights read to me and I understand them, I.  Do or do not, circle
one, want to make a statement at this time”; is that correct?

 

[A]: 
Yes.

 

[Q]: 
Judge, is there any reason you didn’t also include, “I do or I do not want an
attorney at this time,” so that he would have the opportunity to waive that
right as well?

 

[A]: 
I cannot recall some specific reason for not writing that there.

 

[Q]: 
And is there any reason you also did not include the right that he had the
right to terminate the interview at any time and that he understood that as
well, specifically?

 

[A]: 
Well, no specific reason other than, you know, it was already set forth up
here.

 

Section 51.17 of the Family Code provides that
Chapter 38 of the Texas Code of Criminal Procedure applies to judicial
proceeding in juvenile cases.  Tex. Fam.
Code Ann. § 51.17 (Vernon Supp. 2005).  The Fourteenth Court of Appeals has
construed section 51.095 consistently with the language of article 38.22 Code
of Criminal Procedure.  See Marsh v. State, 140 S.W.3d 901, 912 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).  In Marsh, the juvenile
defendant contended that the State failed to establish that he knowingly, intelligently,
and voluntarily waived his rights, although a magistrate read the required
warnings and the juvenile indicated he understood those warnings.  Id. at 905.  The court overruled that complaint, pointing out that article 38.22
does not require an express waiver of rights.  Id. (citing Rocha v.
State, 16 S.W.3d 1 (Tex. Crim. App. 2000)).

Like the defendant in Marsh, J.L. made a
written verification of his choice to give a statement and told Judge Davis
that he understood the statutory warnings.  Section 51.095(a)(5)(A) does not
require that every right be individually waived either in writing or verbally,
but only that the juvenile knowingly, intelligently and voluntarily waive each
right.  In viewing the manner in which the warnings were given to the
appellant, we find that section 51.095(a)(5)(A) was complied with.

 

Conclusion

 

The record shows that, under the totality
of the circumstances, J.L. made his statement knowingly
and voluntarily, and not as the product of coercion.  See In re R.J.H.,
79 S.W.3d at 6.  In addition, the requirements of section 51.095(a)(5)(A) were met. 
The trial court did not err or abuse its discretion in denying the motion to
suppress.  Accordingly, we overrule J.L.’s issue and affirm the trial court's
judgment.

 

BILL VANCE

Justice

 

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Affirmed 

Opinion delivered and
filed November 7, 2007

[CV06]

 







[1] Section 51.095(a) provides in pertinent part:                     (a)       Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:                                         (1)               the statement is made in writing under a circumstance described by Subsection (d) and:                                                             (A)             the statement shows that the child has at some time before the making of the statement received from a magistrate a warning that:                                                                                 (i)           the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;                                                                                 (ii)         the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;                                                                                 (iii)        if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state;  and                                                                                 (iv)        the child has the right to terminate the interview at any time;     

Tex.
Fam. Code Ann. § 51.095(a) (Vernon
2002).