

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00109-CR

_____


MICHAEL HERRING, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 10F678-202



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

As Nigel Phillips and three friends sat in an automobile in front of Phillips' Texarkana home on May 24, 2010, eating a pizza and visiting with one another, one of the car doors was suddenly jerked open and the four friends were confronted with a young man with an AK-47 assault rifle with a bayonet affixed. The bearer of the assault rifle and two accomplices (who also brandished a pistol) commanded the four occupants of the car to exit the vehicle and lie on the ground. The three bandana-wearing assailants then robbed the prone Phillips and his friends of their valuables, including Phillips' cell phone, and fled.

Michael Herring, a sixteen-year-old juvenile certified to be tried as an adult, was charged with, tried for, and convicted by a jury of the aggravated robbery of Phillips, receiving a sentence of twenty years' imprisonment.

Herring has appealed his conviction, centering his complaints on appeal around a confession given by him. Herring contends that the trial court erred by admitting that confession into evidence, maintaining that it was inadmissible because he avers that it was obtained from him in violation of the Texas Family Code and that it was not a voluntary confession.

We affirm the trial court's judgment because we find no violation of the Texas Family Code in harvesting the confession and the circumstances under which the confession was given do not indicate that it was given involuntarily.

2

**Circumstances Leading to Arrest and Confession**

Later on the same night that Phillips was robbed, Michael Ferguson (a Texas Department of Public Safety patrolman) saw a car approaching him that had its headlights turned off. The driver of the car turned its headlights on, then off, then on again. Because driving at night without the use of headlights is a traffic violation, Ferguson made a U-turn, turned on his overhead lights, and followed the vehicle into an E-Z Mart parking lot. He saw the car's two rear seat passengers exit the car and place an object wrapped in white cloth behind the vehicle's back tire. Both of these passengers, one of whom was Herring, began to walk away from the car. Ferguson picked up the object which had been placed behind the rear tire and unwrapped it from the white cloth, discovering that the object was an AK-47 assault rifle with a bayonet attached. At that time, Herring and the other passenger fled on foot. Ferguson gave chase, caught Herring, handcuffed him, and placed him in the patrol car. Without first having given Herring his *Miranda*[1] warnings, Ferguson questioned him about the vehicle's other occupants and Herring identified them all. When searching Herring, the officer found some female jewelry and a cell phone that was later identified as belonging to a recently-robbed Hooks resident.

Herring was arrested and taken to the Hooks Police Department, a juvenile processing center. Herring was placed in an unlocked room with his mother present. Magistrate Pat James administered the magistrate warnings to Herring, after which officers then re-entered the room and

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 469 (1966).

interrogated Herring. After about an hour and a half, Herring was transported to the juvenile detention center in Texarkana, where his custody was turned over to juvenile officer Melissa Simpson, who then transported Herring to the juvenile detention center in Marshall, Harrison County.

Texarkana Police Detectives Matt Cashatt and Latriesha Grandy were dispatched to Marshall to obtain a statement from Herring. The detectives took Herring to the office of Kenneth Alford, a Harrison County Justice of the Peace. Alford testified that at 12:34 p.m., he administered Herring the *Miranda* warnings which, Alford said, Herring appeared to understand and which he voluntarily waived. Alford then informed Herring that he was turning him over to the detectives so he could make a statement. The detectives interrogated Herring for about two and a half hours. Cashatt testified that Herring voluntarily waived his rights, never asked for an attorney, and spoke freely throughout the interview. Herring's typed statement was given to Alford, who testified that he reviewed it with Herring (outside the presence of the law enforcement officers), who signed it voluntarily. In the statement, Herring confessed to taking part in the charged armed robbery, as well as several other recent armed robberies and burglaries.

Before trial, Herring moved to suppress the confession, arguing, in relevant part, that the typed confession was inadmissible under Sections 51.095 and 52.02 of the Texas Family Code[2] and that Herring neither knowingly nor voluntarily waived his rights. The trial court denied the motion and permitted the State to introduce the confession during its case-in-chief.

[2]*See* TEX. FAM. CODE ANN. § 51.095 (West Supp. 2011), § 52.02 (West 2008).

4

**Standard of Review**

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

**Application of Section 51.095(a)(1) of the Texas Family Code**

Herring argues that his confession was improperly admitted into evidence because it was taken in violation of the juvenile processing and detention requirements of Section 51.095(a)(1) of the Texas Family Code.[3]

Although juvenile proceedings are identified as civil or quasi-criminal rather than criminal, the protections and due process requirements of adult criminal prosecutions are applicable to juvenile cases. *See Breed v. Jones*, 421 U.S. 519, 529–31 (1975). The confession of a juvenile is

---

[3]Even though Herring was eventually certified to stand trial as an adult, he was a juvenile at the time of his arrest, making the juvenile provisions of the Texas Family Code applicable to his initial detention. *See Griffin v. State*, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989).

not admissible at trial unless it is obtained in compliance with the provisions of Section 51.095 of the Texas Family Code.  *See In re L.M.*, 993 S.W.2d 276, 291 (Tex. App.—Austin 1999, pet. denied).

Section 51.095(a)(1) of the Texas Family Code states:

>    (a)    Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

>>    (1)    the statement is made in writing under a circumstance described by Subsection (d) and:

>>>    (A)    the statement shows that the child has at some time before the making of the statement received from a magistrate a warning that:

>>>>    (i)    the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;

>>>>    (ii)    the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;

>>>>    (iii)    if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state; and

>>>>    (iv)    the child has the right to terminate the interview at any time;

>>>    (B)    and:

(i)    the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court personnel, provided that the bailiff or law enforcement officer may not carry a weapon in the presence of the child; and

(ii)    the magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily, and if a statement is taken, the magistrate must sign a written statement verifying the foregoing requisites have been met;

(C)    the child knowingly, intelligently, and voluntarily waives these rights before and during the making of the statement and signs the statement in the presence of a magistrate; and

(D)    the magistrate certifies that the magistrate has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights; . . . .

TEX. FAM. CODE ANN. § 51.095(a)(1). Section 51.095(d) of the Texas Family Code states:

(d)    Subsections (a)(1) and (a)(5) apply to the statement of a child made:

(1)    while the child is in a detention facility or other place of confinement;

(2)    while the child is in the custody of an officer; or

7

> > (3)    during or after the interrogation of the child by an officer if the child is in the possession of the Department of Family and Protective Services and is suspected to have engaged in conduct that violates a penal law of this state.

TEX. FAM. CODE ANN. § 51.095(d).[4]

Herring contends that the confession was inadmissible because the detectives were present when Alford administered the statutory warnings to him.

For a juvenile's confession to be admissible at trial, a magistrate is required to read the warnings listed in Section 51.095(a)(1)(A)(i)–(iv) to the juvenile before any interrogation by law enforcement. *See L.M.*, 993 S.W.2d at 290–91. There is no requirement anywhere in Section 51.095 mandating that the magistrate be alone with the juvenile at the time the warnings are given.[5]

In support of his argument, Herring points to the suppression hearing wherein Cashatt testified that both he and Detective Grandy were present when Alford gave Herring the statutory warnings.[6] Herring cites the case of *Diaz v. State* for the proposition that "[n]o law enforcement personnel are allowed to be present during the warnings, . . . ." 61 S.W.3d 525, 527 (Tex. App.—San Antonio 2011, no pet.). While we acknowledge that the statement quoted above is

---

[4]The State does not contest that under subsection (d), Herring was in the custody of an officer at the time he made the confession.

[5]It is illustrative that subsection (a)(1)(B)(i) requires that no law enforcement officers or prosecuting attorney be present when the child's statement is signed and that subsection (a)(1)(D) requires the magistrate to certify that he examined the child independent of any law enforcement or prosecuting attorney. TEX. FAM. CODE ANN. § 51.095.

[6]During the suppression hearing, Alford testified that he and Herring were alone at the time the warnings were given.

contained in the *Diaz* case and is not taken out of context, we read the statute as it is written and observe that there is no such requirement in the statute. *See* TEX. FAM. CODE ANN. § 51.095. In the applicable statute, it is important to distinguish between administration of the warnings enumerated in Section 51.095(a) (which are administered before a statement is taken from the juvenile), an examination of the juvenile by a magistrate after a statement has already been given but has yet to be signed, and the signing of the statement. The statute requires the law enforcement officers to be outside the presence of the juvenile and the judge when the statement is reviewed by the judge with the juvenile (*see* TEX. FAM. CODE ANN. § 51.095(a)(1)(D)) and when the juvenile actually signs the statement (*see* TEX. FAM. CODE ANN. § 51.095(a)(1)(B)(i). It does not require the absence of the police when the statutory warnings are given by the magistrate to the juvenile. We choose to apply the statute as it is written, and therefore we overrule this point of error.

**Voluntariness of Confession**

Herring also contends that the confession violated the Texas Family Code because the totality of the circumstances indicates that his confession was involuntary.

In order for a juvenile's confession to be admissible, the juvenile must knowingly, intelligently, and voluntarily waive his rights. TEX. FAM. CODE ANN. § 51.095(a)(1)(C). If the circumstances indicate that the juvenile defendant was threatened, coerced, promised something in exchange for his confession, or if he was incapable of understanding his rights and warnings, the

9

trial court must exclude the confession as involuntary. *Darden v. State*, 629 S.W.2d 46, 51 (Tex. Crim. App. [Panel Op.] 1982). Once the accused claims that a confession was not voluntarily given, the burden is on the State to prove its voluntariness. *Farr v. State*, 519 S.W.2d 876, 880 (Tex. Crim. App. 1975). In determining the voluntariness of the confession, the trial court must look at the totality of the circumstances. *Griffin*, 765 S.W.2d at 429.

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *See, e.g.*, *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984). However, this general rule is inapplicable where (as in this case) the suppression issue has been consensually re-litigated by the parties during trial on the merits.[7] *Id.* Moreover, it would be unreasonable to ignore trial evidence in our review of the court's suppression decision only to be confronted by the evidence in our consideration of whether the error was harmless. TEX. R. APP. P. 44.2. Thus, we may consider evidence adduced at trial as well as during the suppression hearing in reviewing whether Herring's confession was voluntary.

At the time of the arrest, Herring was sixteen years old, had a low intellect, a learning disability, and mental health issues. Herring was questioned at the scene of the arrest about the

---

[7]The jury was instructed, in relevant part:

> You are instructed that unless you believe from the evidence beyond a reasonable doubt that the alleged confession or statement introduced into evidence was freely and voluntarily made by the defendant without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof.

other passengers that were in the vehicle with him.  He was interrogated for about an hour and a half at the Hooks Police Department, and according to his confession, the officers told him that if he did not help them find one of the codefendants, Herring would have to take all the charges by himself.

Within six hours of his arrest, Herring was transported to the juvenile detention center in Marshall, Texas.  About seven hours after Herring's arrival in Marshall, Detectives Cashatt and Grandy took him to Alford's office.  Although Cashatt testified that he and Grandy were present and armed at the time Alford administered Herring the statutory warnings, Grandy and Alford both testified that Alford and Herring were alone when the warnings were given.  According to Alford's testimony and the magistrate's juvenile warning form, Herring did not have any questions, understood his rights, and voluntarily waived them.

With Alford outside the unlocked office, Grandy questioned Herring for about two and a half hours.  Cashatt testified that Herring voluntarily waived his rights, spoke freely throughout the interview, and neither asked for an attorney nor requested that the interview halt.  Outside the detectives' presence, Alford reviewed the typed statement with Herring, who did not ask to make any corrections to the statement, and who voluntarily signed it.  Alford completed the magistrate's verification of admissibility of statement of a juvenile form (magistrate's verification of admissibility).

Both the magistrate's juvenile warning form and the magistrate's verification of admissibility failed to check the boxes to indicate that Herring voluntarily waived his rights. Alford testified that both omissions were errors on his part and that (in spite of the failure of Alford's failure to check either box) Herring did, in fact, knowingly, intelligently, and voluntarily waive his rights.

The determination of whether a statement is voluntary is a mixed question of law and fact, i.e., an application of law to a fact question. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005); *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000) (if trial court finds that statement is voluntary and thus admissible, court must enter an order stating its legal conclusion, along with specific findings of fact upon which conclusion was based). Here, Herring moved to suppress the confession on the grounds that it was obtained in violation of the Texas Family Code and that it was not a voluntary confession. The trial court held a hearing on the motion and testimony was taken from the arresting officer, one of the detectives who interrogated Herring, and the magistrate judge who gave Herring the statutory warnings and independently determined that Herring's confession was knowingly, intelligently, and voluntarily given. At the conclusion of the suppression hearing, the trial court entered findings of fact and conclusions of law, stating, in relevant part:

> This Court is of the opinion that . . . the statement was obtained from the juvenile in Marshall, and the Court is satisfied all provisions of the Family Code as it relates to the juvenile's giving of statements were complied with. Further, that there were two boxes not signed on the magistrate's verification of admissibility of statement

12

of a juvenile, and the Court is satisfied with the explanation given by Judge Alford, and the Court believes, when looking at all the documents, that it supports his testimony. The Court is also satisfied that based on the testimony presented that the juvenile had the mental capability to understand the rights given to him and voluntarily waived each of those rights.

The Texas Court of Criminal Appeals has held that "appellate courts . . . should afford [almost total] deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman*, 955 S.W.2d at 89. Here, the trial court's conclusion that Herring's statement was voluntary was based upon the credibility and demeanor of witnesses who directly interacted with Herring on or about the time of his confession. Granting due deference to the trial court's determination, and after considering the totality of the circumstances, including the evidence admitted during trial, we agree with the trial court that Herring's confession was voluntary. Accordingly, we overrule this point of error.

Although in its opening statement Herring's brief alleges a violation of Section 52.02 of the Texas Family Code as an additional impediment to the introduction of Herring's brief in evidence at trial, it makes no further mention of the application of that statute to the case under consideration here. This issue not having been adequately addressed in the brief, we decline to deal with it. TEX. R. APP. P. 38.1(h).

Finally, Herring's brief appears to advance the proposition that a statement must be made in the handwriting of the declarant (as opposed to one which, as here, has been drafted by another

person and signed by the declarant) in order to be admissible; he cites no authority for that premise. Also, in order to preserve error for appellate review, the complaining party must have raised his complaint in the form of an objection, request, or motion in the trial court and obtained a ruling. TEX. R. APP. P. 33.1(a)(1); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Whether the confession was in writing was neither raised in the motion to suppress nor argued at trial. Accordingly, this point was not preserved for our review, and we overrule it.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     January 10, 2012
Date Decided:       February 2, 2012

Publish

14